UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Rhett H. Tison,<br><br>                                       Debtor. | C/A No. 10-06825-DD<br><br>Adv. Pro. No. 11-80019-DD<br><br>Chapter 7 |
| Rhett H. Tison,<br><br>                                       Plaintiff,<br><br>v.<br><br>Household Finance Corporation, II,<br>HSBC,<br><br>                                       Defendants. | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court on a Motion for Summary Judgment ("Motion") filed by Household Finance Corporation, II, HSBC ("Defendants") on November 28, 2011 and a Motion for Summary Judgment ("Motion") filed by Rhett H. Tison ("Plaintiff") on November 28, 2011. This adversary was filed on March 1, 2011, seeking sanctions against Defendants for violation of the discharge injunction as well as an injunction against further collection efforts by Defendants of amounts allegedly not contained in the parties' Reaffirmation Agreement. Both parties filed timely Objections to the opposing party's Motion. A hearing was held on December 20, 2011. At the conclusion of the hearing, the Court took the matter under advisement, subject to further submissions from the parties. Plaintiff submitted an affidavit executed by him, along with numerous exhibits on January 17, 2012, and submitted an amendment to one of the exhibits on February 6, 2012. Defendants filed a response on February 9, 2012. The Court now issues this Order.

## **FINDINGS OF FACT**

Plaintiff filed his chapter 7 case on September 22, 2010. On October 19, 2010, former counsel for Defendants filed with the Court a Reaffirmation Agreement entered into by the parties. Under the terms of the Reaffirmation Agreement, Plaintiff proposed to reaffirm a debt with Defendants secured by his residence in Pawleys Island, South Carolina. The Reaffirmation Agreement indicates that the total amount reaffirmed is $617,892.92, to be paid in 328 monthly payments of $2,268.64. The interest rate under the Reaffirmation Agreement is 5.25 percent. The principal balance owed on the loan at the time of the Reaffirmation Agreement was $394,685.17. Various other fees and charges, including late fees, costs, and interest, had also accumulated. The Reaffirmation Agreement indicates that the current market value of the property is $450,000.

A calculation of the amortization of the debt repayment set forth in the Reaffirmation Agreement reveals that the agreement is mathematically impossible to perform. Repayment of $617,892.92 over 328 months at 5.25 percent interest requires payments of $3,551.63. Thus, 328 payments of $2,268.64, as provided for in the Reaffirmation Agreement, will not result in payment of the entire debt but requires a large balloon payment.

The Reaffirmation Agreement and Plaintiff's chapter 7 Schedules indicated that Plaintiff's living expenses exceeded his income by $2,505.00. Debtor filed his case pro se and was not represented by an attorney in negotiating the Reaffirmation Agreement; therefore, the Court conducted a hearing on the Reaffirmation Agreement on November 16, 2010. At the hearing, Plaintiff indicated that a family member was now making the monthly payments for one of his automobiles and that he was receiving additional family financial assistance in order to enable him to meet his expenses. He also stated that the Reaffirmation Agreement was in his

best interest because it allowed him to reduce his monthly mortgage payment by almost $600 per month. He explained to the Court that keeping the home was very important to him and his family, as he is a single parent with five young children, and the home is across the street from his parents' home. Plaintiff presented an amended Schedule J at the hearing to show the Court his efforts to reduce his expenses. The amended Schedule J showed Plaintiff had negative monthly disposable income of only $218 and had therefore reduced his monthly expenditures by over $2,000. Plaintiff also presented an amended Reaffirmation Agreement, which differed from the original Agreement only in that it reflected the figures set forth in the amended Schedule J. The financial help Plaintiff was receiving from his relatives rebutted the presumption of undue hardship. As a result, the Court found that the Reaffirmation Agreement was in Plaintiff's best interest and entered an Order approving the October 19 Reaffirmation Agreement on November 16, 2010. Plaintiff received his discharge and his case was closed.

Plaintiff commenced this adversary proceeding on March 1, 2011, alleging that subsequent to the Court's approval of the Reaffirmation Agreement, Defendants attempted to collect additional amounts over and above the payment provided for in the Reaffirmation Agreement. In Household Finance Corporation, II's ("HFC") counterclaims,[1] HFC argues breach of contract due to Plaintiff's failure to make any payments under the Reaffirmation Agreement, rescission of the Agreement due to substantial breach by Plaintiff, and rescission of the Reaffirmation Agreement based on either a unilateral or mutual mistake. Defendants' Motion argues that there was no meeting of the minds with respect to the Reaffirmation Agreement and therefore it should be rescinded.

---

[1] Household Finance Corporation, II is the only defendant who asserted counterclaims. HSBC filed an Answer with Household Finance Corporation, II, but did not assert counterclaims.

A dispute arose during the parties' discovery period, and Motions for Protective Orders were filed by both parties. A hearing was held on those motions on December 6, 2011. At the conclusion of that hearing, the Court entered two orders granting in part both Motions. The Order granting Defendants' Motion for Protective Order required Defendants to produce, within thirty days from the date of entry of the order, "the case names and numbers for any litigation concerning a reaffirmation agreement entered into between a debtor and Defendant in a Fourth Circuit bankruptcy proceeding during calendar years 2009 through 2011, in which the debtor claimed that Defendant was attempting to collect more than the total debt provided for in the reaffirmation agreement." Order Granting Motion for Protective Order, docket #40.

At the conclusion of the December 20 hearing on the parties' Motions for Summary Judgment, the Court took the matters under advisement pending the conclusion of the discovery period provided for in the Orders Granting Motion for Protective Order entered December 7. The Court instructed the parties to complete their discovery and, if information was produced which Plaintiff felt necessitated a further hearing, Plaintiff should contact the Court by January 17, 2012. The Court told the parties that if it did not hear from Plaintiff by January 17, 2012, the Court would rule on the Motions for Summary Judgment.

On January 17, 2012, Plaintiff submitted numerous additional documents to the Court. These documents consisted of an affidavit executed by Plaintiff and copies of multiple reaffirmation agreements from other jurisdictions, all involving Defendants. Plaintiff's affidavit states that Defendants told Plaintiff in response to the Order Granting Motion for Protective Order that they were unable to find any instances of litigation relating to a reaffirmation agreement entered into by Defendants in the Fourth Circuit. However, Plaintiff's affidavit indicates that he searched PACER to find fifteen reaffirmation agreements which he alleges

confirm that Defendants had a pattern of "presenting lesser payments for reaffirmation approval then expecting to collect additional money . . . ." Plaintiff's Supplemental Affidavit, docket #48. None of these reaffirmation agreements appear to be the subject of a dispute between a debtor and Defendants.

Plaintiff did attach one affidavit from a debtor in Maryland, Mr. Jerry Collier, who had entered into a reaffirmation agreement with Defendants in September 2011. The affidavit was signed by Mr. Collier in Maryland on January 11, 2012, and was signed by a South Carolina notary on January 13, 2012. This affidavit was amended on February 6, 2012. The only change in the amended affidavit is that the South Carolina notary stamp and signature dated January 13, 2012 is replaced by a Maryland notary stamp and signature dated January 11, 2012. Apparently, Mr. Collier did not sign the affidavit in the presence of either of the notaries, and as a result, the affidavit is not proper.

Following the submission of the additional documents by Plaintiff, Defendants filed a memorandum in response on February 9, 2012. Defendants' memorandum attacks the affidavit of Mr. Collier as defective, argues that Plaintiff's filing is not permitted under the Court's previous orders in this adversary proceeding, and contends that the additional filings, if not stricken by the Court, are not relevant and do not create any material issues of fact necessitating additional inquiry by the Court.

Plaintiff argues that the documents he submitted to the Court on January 17, 2012 show a pattern of wrongdoing by Defendants and that based on this wrongdoing, it would not be improper to enforce the Reaffirmation Agreement against the Defendants. However, the Court finds that for a number of reasons, the additional documents submitted by Plaintiff should not be considered and do not have an effect on the result here. First, the Court notes that Plaintiff was

not authorized by the Court to submit any additional evidence in this matter. The Court instructed Plaintiff at the summary judgment hearing on December 20 that once he received production from Defendants, if any, of the additional documents required by the Court's December 7 Order Granting Motion for Protective Order, Plaintiff was to contact the Court if he felt those documents necessitated a further hearing. No such documents were produced by Defendants. Plaintiff, on his own initiative, sought additional reaffirmation agreements involving Defendants and submitted them to the Court well after the conclusion of the parties' discovery period. The December 7 Order requiring Defendants to produce additional documents to Plaintiff was narrow and limited, and ordered production of only those reaffirmation agreements which were the subject of litigation in the Fourth Circuit. *See* Order Granting Motion for Protective Order, docket #40. The Court has reviewed the reaffirmation agreements presented by Plaintiff and notes that the payment calculations, like the calculation in the reaffirmation agreement at issue here, are impossible to perform. None of the reaffirmation agreements submitted by Plaintiff were the subject of a dispute, with the possible exception of Mr. Collier's, discussed above.[2] Further, the agreements came from jurisdictions across the country, including Texas, Kentucky, and Ohio. These agreements were not timely supplied and are simply not relevant to the matter presently before the Court. As a result, they will not be considered.

---

[2] The only reaffirmation agreement submitted by Plaintiff which appears to be the subject of a dispute is the reaffirmation agreement between Defendants and Mr. Collier. Plaintiff submitted an affidavit allegedly executed by Mr. Collier in an attempt to explain the misunderstanding between Defendants and Mr. Collier. However, the affidavit suffers from a fatal deficiency, as it was improperly notarized. *See* S.C. Code § 26-1-80; *In re Ulmer*, 363 B.R. 777, 782 (Bankr. D.S.C. 2007) (stating that a notarization is invalid and illegal if the notary does not witness the affiant signing the affidavit). Plaintiff submitted an amended affidavit in an attempt to cure the original affidavit's defect; however, that affidavit indicates that the Maryland notary notarized the affidavit on January 11, 2012, the same date that Mr. Collier signed the original affidavit. Clearly, this is not possible, rendering the amended affidavit also invalid and calling into question the credibility of the entirety of the documents submitted by Plaintiff. The affidavit of Mr. Collier is invalid and is not entitled to any consideration by the Court.

**CONCLUSIONS OF LAW**

### I. Summary Judgment Standard

Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, Rule 56 of the Federal Rules of Civil Procedure governs summary judgment in adversary proceedings. *In re Rigoroso*, 453 B.R. 612, 614 (Bankr. D.S.C. 2011). Fed. R. Civ. P. 56 states, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis original). Only factual disputes which could potentially affect the end result of the suit should cause a motion for summary judgment to be denied; "irrelevant or unnecessary" factual disputes will not preclude the entry of summary judgment. *Id.* at 248. A dispute relating to a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A court determining whether summary judgment should be granted should look to multiple sources, including the pleadings, discovery responses, depositions, and affidavits, if any. *Rigoroso*, 453 B.R. at 614 (quoting *In re Proveaux*, No. 07-05384-JW, slip op., at 5 (Bankr. D.S.C. Mar. 31, 2008)). The court should view the facts and any reasonable inferences "'in the light most favorable to the nonmoving party.'" *Rigoroso*, 453 B.R. at 614 (quoting *United Rentals, Inc. v. Angell*, 592 F.3d 525, 530 (4th Cir. 2010)). Once the movant has presented sufficient evidence to support its summary judgment motion, the burden shifts to the nonmoving party to show that there are genuine issues of material fact. *Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008). The nonmovant cannot "rest upon mere allegations or denials of his

pleading, but 'must come forward with specific facts showing that there is a genuine issue for trial.'" *Id*. at 297 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986)).

**II. Reaffirmation Agreement**

11 U.S.C. § 524(c) provides that a chapter 7 debtor may reaffirm a debt and sets forth several requirements the debtor must meet to do so. 11 U.S.C. § 524(c); *In re Tincher*, No. 11-01164-dd, 2011 WL 2650569, at *1 (Bankr. D.S.C. July 5, 2011). Upon reaffirming a debt, the debtor will remain personally liable for the debt, when such debt would otherwise have been discharged in his chapter 7 case. *Tincher*, 2011 WL 2650569, at *1. Reaffirmation agreements concerning real property are closely scrutinized and will only be approved if they are in the debtor's best interest and will not impose an undue hardship on the debtor. *Id.* at *2.

The Court found after a hearing that the Reaffirmation Agreement entered into by the parties was in Plaintiff's best interest for a number of reasons. At the time, the Court was not aware of the mathematical impossibility of the agreement. The principal balance on the loan at the time the parties entered into the Reaffirmation Agreement was $394,685.38. An amortization using this principal amount and the terms provided for in the Reaffirmation Agreement yields a total amount of $744,113.92, paid in monthly installments of $2,268.64 over the life of the Reaffirmation Agreement. Payment of $617,892.92 requires monthly payments of $3,551.63 for the life of the Reaffirmation Agreement. Whatever the parties' intention, the Reaffirmation Agreement is mathematically impossible to perform and should not be enforced. The agreement is rescinded. There are no material issues of fact as to HFC's counterclaim, and HFC is entitled to judgment as a matter of law. Because there is no Reaffirmation Agreement to enforce, all other relief is denied and the adversary proceeding is dismissed.

## **CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment is granted. Plaintiff's Motion for Summary Judgment is denied. The parties' Reaffirmation Agreement, filed on October 19, 2010 and approved by the Court on November 16, 2010, is not enforceable and is rescinded.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**02/22/2012**



Entered: 02/23/2012

David R. Duncan
US Bankruptcy Judge
District of South Carolina